UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
KAZMEL D. ROSS,

                     Plaintiff,

                                       **12 CV 8545 (LGS) (FM)**

        -against-

THE CITY OF NEW YORK, et al.,

                     Defendants.

----------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**JOEL BERGER
360 LEXINGTON AVE., 16th Fl.
NEW YORK, NY 10017-6502
(212) 687-1425**

**ATTORNEY FOR PLAINTIFF**

### *TABLE OF CONTENTS*

Page

TABLE OF CONTENTS…………………………………….. i

TABLE OF AUTHORITIES…………………………………. ii

PRELIMINARY STATEMENT……………………………… 1

STATEMENT OF FACTS…………………………………… 3

ARGUMENT………………………………………………. 6

    I. MULLINGS'S ABANDONMENT OF PLAINTIFF'S
    CELLBLOCK WAS DELIBERATE INDIFFERENCE……. 6

    II. CUIN, HILL AND JOHNSON ARE PROPER DEFENDANTS.. 16

    III. THE CITY OF NEW YORK IS A PROPER DEFENDANT… 17

CONCLUSION……………………………………………… 18

*TABLE OF AUTHORITIES*

**CASES**                                                                   Page

*Abrue v. The City of New York,*
        11 CV 6768 (PKC) (KNF) (SDNY Oct. 17, 2012)………...          11

*Brock v. Wright,*
        315 F.3d 158 (2d Cir. 2003)…………………………………          8, 16

*Byrd v. Abate,*
        945 F. Supp. 581 (SDNY 1996)……………………………          9, 13

*Design Strategy. Inc. v. Davis,*
        469 F.3d 284 (2d Cir. 2006)…………………………………          15

*Desulma v. The City of New York,*
        2001WL798002 (SDNY 2001)……………………………..          14

*Fair v. Weiburg,*
        2006WL2801999 (SDNY 2006)……………………………          14

*Farmer v. Brennan,*
        611 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)……   7, 8, 9, 13, 14

*Fernandez v. NYC Dept. of Correction,*
        2010WL1221017 (SDNY 2010)……………………………          14

*Fischel v. Armitage,*
        128 F.3d 50 (2d Cir. 1997)…………………………………          7

*Fischer v. Koehler,*
        692 F. Supp. 1519 (SDNY 1988)…………………………          7, 9

*Garcia v. Rodriguez,*
        2007WL2456631 (SDNY 2007)……………………………          14

*Grant v. Borroughs,*
        2000WL1277592 (SDNY 2000)……………………………..          12

*Hart v. Sheahan,*
        396 F.3d 887 (7th Cir. 2005)…………………………………          10

*Jaipersaud v. ARDC Bldg. C-74,*
        1996WL1086521 (EDNY 1996)……………………………...          12

*Krein v. Norris,*
    309 F.3d 487 (8th Cir. 2002)………………………………………… 10, 13

*Lawrence v. Norris,*
    307 F.3d 745 (8th Cir. 2002)………………………………………… 10

*Lyncee v. Jenks,*
    2000WL343893 (SDNY 2000)………………………………………… 14

*Matthews v. Armitage,*
    36 F. Supp.2d 121 (NDNY 1999)…………………………………… 14

*Residential Funding Corp. v. DeGeorge Financial Corp,*
    306 F.3d 99 (2d Cir. 2002)………………………………………… 15

*Rodriguez v. Connecticut,*
    169 F. Supp. 2d 39 (D. Conn. 2001)…………………………… 9-10, 13

*Sullivan v. Graham,*
    2011WL4424355 (NDNY 2011)…………………………………… 14

*Urena v. Fischer,*
    2010WL2134564 (NDNY 2010)…………………………………… 14

*Walker v. Schult,*
    717 F.3d 119 (2d Cir. 2012)………………………………………… 7, 8, 13

*Whitson v. Stone County Jail,*
    602 F.3d 290 (8th Cir. 2010)………………………………………… 9, 10

*Zimmerman v. Macomber,*
    2001WL946383 (SDNY 2001)……………………………….. 12

## OTHER AUTHORITIES

Local Civil Rule 56.1……………………………………………… passim

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
**KAZMEL D. ROSS,**

                              Plaintiff,

          -against-

                                                    **12 CV 8545 (LGS) (FM)**

**THE CITY OF NEW YORK, et al.,**

                              Defendants.
------------------------------------------------------------------X

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
### TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Plaintiff Kazmel Ross submits this Memorandum of Law in opposition to defendants' motion for summary judgment.

Plaintiff is a former inmate of a New York City jail who was severely slashed in the face by other inmates on July 31, 2012, requiring approximately 50 stitches and leaving him with an ugly scar running from his right ear almost to his chin. The slashing was an assault, not a fight: plaintiff was not accused of fighting and was not disciplined in any manner, while the assailants were punished.[1]

Plaintiff alleges -- ***and for purposes of their motion defendants accept*** -- that at the time of the assault the one and only correction officer assigned to guard the maximum security cellblock, *i.e.,* the only officer assigned to a post within the cellblock, had

_____

[1] Defendants' Local Civil Rule 56.1 Statement ¶ 37; Plaintiff's Local Civil Rule 56.1 Statement, Additional Material Facts ¶¶ 20-21.

abandoned the cellblock entirely in violation of his own department's rules.[2]   Plaintiff will demonstrate that under (i) Supreme Court precedent, (ii) caselaw of the Second Circuit and other circuits, and (iii) decisions of district courts within this Circuit, this abandonment by Officer Paul Mullings constituted deliberate indifference inmate health and safety and therefore violated plaintiff's civil and constitutional rights.   It placed Kazmel Ross at the mercy of five unguarded inmates who took advantage of the absence of any supervision to attack plaintiff, slash his face and leave him scarred for life.

Defendants' preliminary statement irrelevantly emphasizes that Mullings had no advance warning from plaintiff that these five inmates might attack him.   As we shall demonstrate, such advance warning is not a precondition to a successful claim of deliberate indifference.   The Supreme Court has explicitly said so.   The Second Circuit has explicitly said so.   (The Seventh and Eighth Circuits have also explicitly said so.)   No Circuit has disagreed.   District courts within this Circuit have also said so.

It suffices that any correction officer knows the obvious consequences of leaving inmates completely unguarded, and must reasonably anticipate that such misconduct can and will result in serious danger to the imprisoned inmates for whom he is responsible and who are totally dependent upon him for their safety.   The risk is so obvious -- leaving a maximum security cellblock unguarded, abandoning the one and only post within that cellblock -- that the standards established by binding precedent for a finding of deliberate indifference are unquestionably met.

Maximum security cellblocks contain the most dangerous prisoners in the jail. The failure to guard them is by definition deliberate indifference.   If abandoning a

---

[2] Defendants' Local Civil Rule 56.1 Statement ¶ 7 n. 2, first sentence (p. 2). Defendants' Memorandum of Law p. 3 n. 2 (last sentence).  Plaintiff's Local Civil Rule 56.1 Statement, Additional Material Facts ¶ 7.

maximum security cellblock completely -- allowing the inmates to do whatever they please with no officer even watching them -- is not Deliberate Indifference, it is hard to imagine what is.

## STATEMENT OF FACTS

The Court need look no further than pp. 1-2 of plaintiff's Local Civil Rule 56.1 Statement, Additional Material Facts ¶¶ 1-10, for the facts that must be accepted for purposes of deciding the City's motion.

For purposes of this motion, defendants accept plaintiff's version of the incident. Defendants' Local Civil Rule 56.1 Statement, ¶ 7 n. 2, p. 2 (first sentence), *i.e.,* that at the time of the slashing, the one and only correction officer assigned to the cellblock – CO Paul Mullings -- who was required by Department of Correction rules to be watching the maximum security cellblock, from a post only 12 feet away from where the slashing occurred, abandoned the cellblock entirely for 5-10 minutes before the assault and therefore provided the 5 assailants with the opportunity to slash plaintiff. Plaintiff's Local Civil Rule 56.1 Statement, Additional Material Facts ¶ 1-7.

It is undisputed that Mullings was not allowed to leave the cellblock without arranging for a relief officer to take his place. Plaintiff's Local Civil Rule 56.1 Statement, Additional Material Facts ¶ 7. Yet plaintiff's version of the incident, accepted by defendants' for purposes of the motion, maintains that Mullings did precisely that.

Defendants' own records reflect that plaintiff had asked the day before the slashing to be transferred to a different jail because he feared being assaulted; his request was ignored. Plaintiff's Local Civil Rule 56.1 Statement, Additional Material Facts ¶¶ 18-19.

Additionally, since all reasonable inferences must be drawn in favor of plaintiff as the non-moving party, there are additional genuine disputes of material fact that should be taken into account in resolving the motion:

Since defendants accept for purposes of the motion that Mullings abandoned the cellblock entirely and left it unguarded in the hands of maximum security inmates, in violation of his own department's requirements, it follows that he is lying when he says that he did not. Plaintiff's Local Civil Rule 56.1 Statement, Additional Material Facts ¶ 8. This necessarily undermines his credibility on all other matters. It cannot be disputed that he lied at his deposition when he denied ever facing disciplinary charges. Plaintiff's Local Civil Rule 56.1 Statement, Additional Material Facts ¶ 25. He was also denied promotion because he could not pass the exam. *Id.* ¶ 26. Plaintiff is entitled to an inference that Mullings is an incompetent and untruthful officer who abandoned the cellblock to the maximum security inmates and then lied to cover up his misconduct.

Since defendant Hill supports Mullings's version of the facts, it follows that she is lying in covering up for him. For example, Mullings says the incident occurred when he turned away from the inmates to report to Hill (stationed outside the cellblock in the security "bubble") about a broken key needed to lock and unlock cells. But Hill's own report reflects that the broken key was reported to her at 12 Noon, and it is undisputed from all other reports about the incident that the slashing did not occur until 12:15 P.M. Plaintiff's Local Civil Rule 56.1 Statement, Additional Material Facts ¶ 15. Plaintiff alleges that it was Hill who let him out of the cellblock in Mullings's absence, and that it was Hill rather than Mullings who summoned a response squad. Plaintiff's Local Civil

4

Rule 56.1 Statement, Additional Material Facts ¶¶ 9-10.  He is entitled to an inference that his account is accurate.

There also is a glaring discrepancy in the testimony of other correction officers as to where Mullings was when they responded, one claiming that he was with plaintiff at a vestibule outside the cellblock and another (Hill) insisting that he was inside the cellblock. Plaintiff's Rule 56.1 Statement, Additional Material Facts ¶ 16.  This conflict raises a reasonable inference of uncertainty as to just where Mullings really was and bolsters plaintiff's claim that Mullings was outside the cellblock entirely when the slashing took place.

In an effort to further make light of the slashing, Department of Corrections officials accused plaintiff of being an active gang member, suggesting that the incident was an unavoidable conflict between warring gang factions.  But they have been unable in this lawsuit to produce any genuine evidence of plaintiff's alleged gang involvement. One of defendants' reports claims recovery of a letter allegedly confiscated from one of the assailants that supposedly identified plaintiff as a member of a rival "Bloods" faction and ordered the assault, but the City admits that it has been unable to find any such letter. Another report maintains that plaintiff admitted after the assault to being a gang member, but plaintiff vehemently denies this and the City has failed to produce any tape recording or even handwritten notes of the officer to whom he allegedly made this admission. Plaintiff's Rule 56.1 Statement, Additional Material Facts ¶¶ 17, 23-24.  Accordingly, there is good reason to infer that defendants made it up to claim of plaintiff's alleged gang involvement in order to deflect responsibility.

Defendants have been unable to produce any records of searches for weapons during the month of the assault and several proceeding months, raising a reasonable inference that no such searches were in fact conducted.  Plaintiff's Rule 56.1 Statement, Additional Material Facts ¶¶ 22.  The failure to conduct any such searches would certainly be a factor in determining that defendants were deliberately indifferent to plaintiff's health and safety.  According the Second Circuit law plaintiff is entitled either to preclusion or at least an adverse inference jury instruction should defendants claim that any such searches were actually conducted.

Finally, even if the incident occurred because Mullins turned his back on his post to report the broken key, that would not relieve the City of liability.  He concedes that he had means of reporting the broken key other than turning his back on the inmates.  More importantly, he concedes that the incident would not have occurred had the City repaired an electrical locking system that had been broken for many years.  That is not merely an inference, but rather a concession by the principal individual defendant.  Plaintiff's Rule 56.1 Statement, Additional Material Facts ¶¶ 11-14.

### ARGUMENT

### POINT I

### MULLINGS'S ABANDONMENT
### OF PLAINTIFF'S CELLBLOCK
### WAS DELIBERATE INDIFFERENCE

Since defendant' accept plaintiff's version of the incident for purposes of this motion, there can be no question that plaintiff's civil rights under 42 U.S.C. § 1983 were violated by deliberate indifference to his safety -- leaving a dangerous maximum security cellblock totally unguarded, with no officer being anywhere within the cellblock.

The City seems to be under a delusional belief that a correction officer leaving the one and only post within a maximum security cellblock, leaving the cellblock entirely unguarded -- in violation of his own department's requirements -- somehow does not meet the federal standard of deliberate indifference to the safety of the inmates. This Court should disabuse defendants of that belief.

The Constitution "imposes on prison officials 'a duty ... to protect prisoners from violence at the hands of other prisoners.'" *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997), quoting *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994). As Judge Lasker noted with respect to the NYC Department of Correction, that obligation is violated where there is "inadequate staffing and supervision." *Fischer v. Koehler*, 692 F. Supp.1519, 1521 (SDNY 1988).

In *Walker v. Schult*, 717 F.3d 119 (2012), the Second Circuit reiterated its long-standing view that there is deliberate indifference if correction officers "know of, and disregard, an excessive risk to inmate health or safety," and that if the risk was "obvious or otherwise must have been known to a defendant" a fact finder may conclude "that the defendant was actually aware of the risk." 717 F.3d at 125 (citations omitted). The Circuit also reiterated its long-standing view that deliberate indifference results from the "failure of custodial officers to employ reasonable measures to protect an inmate from violence by other prison residents," and that ignoring a "pervasive risk of harm ... from other prisoners" means that "prison officials displayed deliberate indifference to the danger." *Id.* at 128 (citations omitted). Here the risk was so "obvious" -- leaving a maximum security cellblock unguarded, abandoning the one and only post within that cellblock -- that the standards reaffirmed by the Circuit in *Walker* are indisputably met.

Since on a summary judgment motion the district court must "view the evidence in the light most favorable" to the non-movant, "drawing all reasonable inferences in his favor," *Brock v. Wright*, 315 F.3d 158, 160-61 (2d Cir. 2003) (reversing a grant of summary judgment for defendants on a prisoner's deliberate indifference claim), the City's summary judgment motion in this case cannot possibly succeed.

The City is of the misguided belief that to establish deliberate indifference a victim of a prisoner-on-prisoner assault must prove that he believed himself to be in grave danger from a specific assailant and must have explicitly warned corrections officials of this danger -- that regardless of any other facts, this is an ironclad requirement, a precondition without which no prisoner can ever prevail. Nothing could be farther from the truth. In *Farmer v. Brennan, supra*, the Supreme Court explicitly rejected this argument:

> Nor may a prison official escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault.

511 U.S. at 843, 114 S.Ct. at 1982. It suffices that "the risk is obvious, so that a reasonable man would realize it." 511 U.S. at 842, 114 S.Ct. at 1981. The Second Circuit has repeatedly enforced this principle of *Farmer: Walker, supra*, 717 F.3d at 125; *Brock, supra*, 315 F.3d at 164. Leaving a maximum security cellblock totally unguarded -- abandoning the one and only post within the cellblock, exiting the cellblock completely and leaving the maximum security inmates without any supervision whatever -- is about as "obvious" a risk as there could possibly be. And it is inconceivable that a reasonable man would not realize it when his own department required his continuous presence.

In *Farmer* itself there was no allegation that the victim knew that he was at risk from any specific inmate; it sufficed that under the circumstances the risk was obvious, and the Supreme Court unanimously so held.  The same was true in *Whitson v. Stone County Jail*, 602 F.3d 920, 924 (8th Cir. 2010) (grant of summary judgment reversed where defendants ignored "'an obvious, substantial risk to inmate safety'" by leaving plaintiff unguarded, even though there was no advance warning that plaintiff was "'likely to be assaulted by a specific prisoner,'" quoting *Farmer*, *supra*, 511 U.S. at 843, 114 S. Ct. at 1982)).  Leaving the victim unguarded posed such an obvious risk of danger under the circumstances that the granting of summary judgment was reversed even though the victim had no prior interaction with the assailant and admitted to being completely surprised by the attack.

As Judge Lasker observed in *Fischer v. Koehler*, *supra*, there is an obvious "connection between inadequate staffing and the occurrence of inmate-inmate violence," 692 F. Supp at 1550, and the failure to supervise adequately presents such an obvious risk that it constitutes Deliberate Indifference, *id.* at 1559 (citing Second Circuit cases).

Accordingly, in *Byrd v. Abate*, 945 F. Supp. 581, 586 (SDNY 1996), Judge Sweet determined that "a genuine issue of material fact remains concerning whether C.O. Hults [officer at a Rikers Island jail] acted with deliberate indifference when he left his assigned post" in violation of departmental rules and regulations and an inmate was stabbed in his absence.  Summary judgment was therefore denied.

Similarly, in *Rodriguez v. Connecticut*, 169 F. Supp. 2d 39, 48 (D. Conn. 2001), Judge Hall denied summary judgment in the case of an inmate-on-inmate assault where there were allegations that the officers were away from their posts and the "officers on a

Close Custody unit with gang members designated as security risks, knew that inmates faced a substantial risk of harm if there were no officers at their posts or patrolling the cell blocks."

In *Hart v. Sheahan*, 396 F.3d 887, 893 (7th Cir. 2005), Judge Posner observed the obvious risk of inmate-on-inmate violence where inmates "are not under the observation, or even within hailing distance, of the guards," and a district judge's dismissal of a lawsuit involving inmate-on-inmate assaults at the Cook County Jail was therefore reversed. *Accord, Whitson v. Stone County Jail, supra*, 602 F.3d at 924 (8th Cir. 2010) (grant of summary judgment reversed where defendants ignored an obvious risk by leaving plaintiff unguarded, despite the absence of any advance warning that plaintiff might be assaulted by a specific prisoner); *Lawrence v. Norris*, 307 F.3d 745, 747 (8th Cir. 2002) (denial of summary judgment affirmed where inmate was attacked by another inmate while "the only guard on duty in the barracks area was controlling traffic in the hallway and guarding other inmates in other barracks"); *Krein v. Norris*, 309 F.3d 487 (8th Cir. 2002) (denial of summary judgment affirmed where inmate alleged that an assault by another inmate resulted from inadequate supervision).

Defendants rely primarily on unpublished cases inartfully pleaded by *pro se* inmates. Not one is remotely on point. Not one involved an attack occurring at a location only 12 feet from where a guard was *required* to be, where it was alleged that the guard had completely abandoned the cellblock *in violation of his own department's rules* and there was no other guard post in the cellblock. Maximum security cellblocks contain the most dangerous prisoners in the jail. In this case it is undisputed that the New York City Department of Correction, in recognition of that fact, *required* the presence of an

officer inside this particular maximum security cellblock *at all times*.  Plaintiff's Local Civil Rule 56.1 Statement, Additional Material Facts ¶ 7, citing the deposition testimony of Captain Willbright, defendant Officer Hill and defendant Officer Mullings himself.  The failure to abide by that requirement was by definition deliberate indifference.  If abandoning a maximum security cellblock completely -- allowing the inmates to do whatever they please with no officer even watching them, in violation of the explicit requirements of the officer's own department -- is not deliberate indifference, it is hard to imagine what is.

Notably, defendants do not cite a single appellate decision in support of their theory that abandoning the cellblock completely does not constitute deliberate indifference.  And the few district court cases cited are by no means on point.  Most involved *pro se* prisoner petitions, and were decided either on motions to dismiss because of inadequately written *pro se* pleadings or on summary judgment on sketchy discovery records.  Most did not involve allegations of inadequate staffing, and the few that contained any discussion of staffing had nothing to do with the total abandonment of supervision occasioned by the departure of the one and only correction officer responsible under departmental rules and regulations for guarding a maximum security cellblock to safeguard against assaults.

Defendants devote less than one page of their memorandum to cases having anything to do with staffing as a factor in determining deliberate indifference, and they cite only four cases, all decided by district courts, all unreported, all brought by *pro se* inmates.  Even these four cases are not on point.  In *Abrue v. The City of New York*, 11 CV 6768 (PKC) (KNF) (SDNY Oct. 17, 2012), decided on a Rule 12 (b) (6) motion,

there was in fact an officer Santos on duty in the commissary where the incident occurred (slip op. p. 2). The plaintiff's principal complaint was merely that there were no security cameras and that two other officers who were behind the commissary window did not react quickly enough to provide medical attention (slip op. at 2, 7). In *Zimmerman v. Macomber*, 2001WL946383 (SDNY 2001), there was an officer Dunnigan on duty in the cellblock and his alleged error was not staying in the plaintiff's cell to prevent assault by a cellmate under circumstances where the threat to the plaintiff's safety was far from clear (op. p. 5); the only claim of abandoning a post concerned the alleged failure to provide medical attention quickly enough (*id.* at 6). In *Jaipersaud v. ARDC Bldg. C-74*, 1996WL1086521 (EDNY 1996), another 12 (b) (6) case, the *pro se* inmate presented no evidence as to the staffing patterns at issue in the mess hall area and no evidence that New York City Department of Correction policy required the presence at all times of an officer in the location of the incident. And in *Grant v. Borroughs*, 2000WL1277592 (SDNY 2000), where the *pro se* inmate did not even oppose summary judgment, there also were no allegations as to the actual staffing patterns at issue, no evidence that there were no officers in the area, and no evidence that the Sing Sing policy required the posting of an officer at the exact spot of the incident.

None of these four cases hold that abandoning the one and only post within a cellblock, in violation of departmental rules and regulations established for the safety of the prisoners, is only mere negligence. None hold that that even where such abandonment concededly took place, the prisoner must nonetheless also prove that he believed himself to be in grave danger from a specific assailant and must have explicitly warned corrections officials of this danger. And even if they did, this Court of course is

not bound by them.  It *is* bound by the Supreme Court's explicit holding in *Farmer* that a prisoner is not required to prove that he was "especially likely to be assaulted by the specific prisoner who eventually committed the assault." 511 U.S. at 843, 114 S.Ct. at 1982.  It is also bound by the reasoning of the Second Circuit in *Walker* and its predecessors, 717 F.3d at 125, that disregarding an obvious risk to the safety of the inmates constitutes deliberate indifference.  And it should follow the reasoning of Judge Sweet in *Byrd* and Judge Hall in *Rodriguez*, both of whom determined that they were bound by *Farmer* and Second Circuit precedent, where an officer completely abandons the one and only guard post within a maximum security unit in violation of the strict requirements of his own department.

It is true that some *pro se* prisoners have lost their cases because they did not provide sufficient notice that they were at risk from specific other inmates, but those cases are of no relevance whatsoever to this case.  Such notice might be needed to excuse the failure of officers properly at their posts and on duty to segregate an inmate from his potential assailants, or to excuse the failure of officers properly at their posts and on duty to pay particularly close attention to certain inmates.  But it is irrelevant where the only officer responsible for inmate safety completely disappears, in violation of his department's own requirements, and leaves an inmate at the mercy of five unsupervised assailants.   In that situation the risk is so obvious that both the "objective" test for a condition posing a risk of serious harm, and the "subjective" test requiring that the risk be so apparent that any reasonable officer would know it, are both met.  *Farmer v. Brennan, supra; Walker v. Schult, supra; Whitson v. Stone County Jail, supra; Lawrence v. Norris, supra.; Krein v. Norris, supra; Byrd v. Abate, supra; Rodriguez v. Connecticut, supra.*

And it is inconceivable that any officer acting with such reckless disregard for prisoner safety, in violation of clearly established principles of law and his own department's rules, could be relieved of responsibility on grounds of qualified immunity.[3]

*****************************

There are several additional factors that should be taken into account in deciding the motion, inferences that should be considered in plaintiff's favor on such a motion.

The City does not claim that plaintiff engaged in any violence or that this was a fight. It is undisputed that the assailants, members of a faction of the "Bloods" gang, were punished by defendants and plaintiff was not. Defendants' Rule 56.1 Statement ¶ 37. Plaintiff's Rule 56.1 Statement, Additional Material Facts ¶ 20.

Additionally, defendants have been unable to produce any records of searches for weapons during the month of the assault and several proceeding months. Plaintiff's Rule 56.1 Statement, Additional Material Facts ¶ 22. This entitles plaintiff to preclusion or at least an adverse inference jury instruction should defendants claim that any such searches

---

[3] Defendants cite to a handful of cases in which officers were not accused of abandoning their posts in violation of departmental rules. For example, in *Urena v. Fischer*, 2010WL2134564 (NDNY 2010), the *pro se* prisoner conceded that there were enough officers present to prevent the alleged attack (and the inmate had been found guilty of creating the disturbance in the first place). In *Desulma v. City of New York*, 2001WL798002 (SDNY 2001), the *pro se* inmate conceded that there were escorting officers on the scene. In *Garcia v. Rodriguez*, 2007WL2456631 (SDNY 2007), there is not a word suggesting that the incident occurred because an officer was not present. The same is true of *Lyncee v. Jenks*, 2000WL343893 (SDNY 2000), in which the prison authorities also determined that the plaintiff was the aggressor. In *Fernandez v. NYC Dept. of Correction*, 2010WL1221017 (SDNY 2010), decided on an uncontested 12 (b) (6) motion, the *pro se* inmate did not allege any particular required staffing patterns and the allegedly negligent officer concededly was close enough to see what was happening and to intervene immediately. In *Fair v. Weiburg*, 2006WL2801999 (SDNY 2006) another *pro se* inmate failed to allege any particular required staffing patterns, failed to allege that his cellblock was completely unguarded, and failed to contest defendants' claim that the only correction officer allegedly at fault (CO Prince) was not responsible for the area where the incident (a fight over the TV) took place. In *Sullivan v. Graham*, 2011WL4424355 (NDNY 2011), the *pro se* prisoner did not dispute the defendants' evidence of extensive security measures including the presence of numerous guards patrolling the yard where the incident occurred (p.8). And in *Matthew v. Armitage*, 36 F. Supp.2d 121 (NDNY 1999), there was no evidence of required staffing patterns, no allegation that the incident occurred because of violation of required staffing patterns, and, in any event, the court relied heavily upon the fact that Supreme Court had not yet decided *Farmer* at the time of the 1991 incident. Such cases do not control the resolution of this case.

14

were actually conducted. *Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006); *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002).

There is good reason to infer that Mullings's supervisors made efforts to cover up his wrongdoing and deflect responsibility.  One of defendants' reports claims that plaintiff admitted after the assault to being a gang member, but plaintiff vehemently denies this and the City has failed to produce any tape recording or even handwritten notes of the officer to whom he allegedly made this admission.  Another report claims recovery of a letter allegedly confiscated from one of the assailants that supposedly identified plaintiff as a member of a rival "Bloods" faction and ordered the assault, but the City admits that it has been unable to find any such letter.  Plaintiff's Rule 56.1 Statement, Additional Material Facts ¶ 17, 23-24.

Mullings says he merely turned his back on his post briefly to report a broken key, but he says he did so at 12:15 P.M. and CO Hill's work order for a key replacement had already been written at 12:00 P.M.  Plaintiff's Rule 56.1 Statement, Additional material Facts ¶ 15. There also is a glaring discrepancy in the testimony of other correction officers as to where Mullings was when they responded, one claiming that he was with plaintiff at a vestibule outside the cellblock and another insisting that he was inside the cellblock. Plaintiff's Rule 56.1 Statement, Additional Material Facts ¶ 16.

Even if Mullins turned his back on his post to report the broken key, that would not relieve the City of liability.  He concedes that he had means of reporting the broken key other than turning his back on the inmates, and that the incident would not have occurred had the City repaired an electrical locking system that had been broken for many years. Plaintiff's Rule 56.1 Statement, ¶¶ 11-14.

15

The only argument left to defendants on this record is speculation that the attackers were so deranged that they might have slashed plaintiff even with a Correction Officer looking directly at them from a post only 12 feet from the assault.  Such an argument would be highly counter-intuitive and is of no consequence on a motion for summary judgment, since all reasonable inferences must be resolved in plaintiff's favor. *Brock v. Wright, supra,* 315 F.3d at 160-61 (2d Cir. 2003).  As a matter of common sense, it is far more reasonable to infer -- as plaintiff testified at his deposition (Plaintiff's Rule 56.1 Statement, Additional Material Facts ¶ 27) -- that the assailants would not have risked attacking plaintiff in plain view of an officer looking directly at them from only 12 feet away.  Defendants are not likely to prevail on that theory even at trial.

But to defeat the City's motion plaintiff need not establish that he is going to prevail at trial.  Viewing the record in the light most favorable to plaintiff and drawing all reasonable inferences in his favor, as required by the Second Circuit, it suffices that Mullings's alleged complete abandonment of the cellblock created an obvious risk of significant harm and therefore constituted deliberate indifference.

## POINT II

### CUIN, HILL AND JOHNSON ARE
### PROPER DEFENDANTS

Warden Cuin was responsible for the safety and security of the jail where the incident occurred.  It is undisputed that he is unable to document any searches for contraband in the jail during the month of the incident and for several months before.  It is also undisputed that the incident would not have occurred had he bothered to have the electrical locking system repaired.

Ms. Johnson is the social worker who ignored plaintiff's request to be transferred to another facility for his safety. She did not even pass the request along to the appropriate correctional authorities.

CO Hill is a defendant because it must be accepted for purposes of this motion that she has assisted CO Mullings in fabricating an alternative version of the incident. Hill says that Mullings had approached her in the bubble at the time of incident because of the broken key, that she saw Mullings escort plaintiff out of the cellblock, and that it was Mullings who alerted the probe team. Plaintiff maintains that Mullings had abandoned the cellblock at the time of the incident, that Hill alone saved him from further injury by buzzing him out of the cellblock to safety, and that it was Hill who alerted the probe team. Hill's own report maintains that the broken key was reported to her at 12 Noon, yet all accounts of the incident including Mullings's state that the slashing occurred at 12:15 P.M. And her account of Mullings's whereabouts is inconsistent with the deposition testimony of the Captain in charge of the probe team that responded to the incident.

Cuin, Johnson and Hill are all appropriate defendants in this case.

## POINT III

### THE CITY OF NEW YORK IS A PROPER DEFENDANT

Since summary judgment as to the federal constitutional issues must be denied, this case will remain in federal court. And since the case must remain in federal court, the pendent state law claims against the City of New York for *respondeat superior* responsibility for the tortious acts of the individual defendants remains to be tried together with the federal claims, pursuant to this Court's supplemental jurisdiction as codified in 28 U.S.C. § 1367.

electrical locking system, and the failure to conduct any searches for inmate weapons, might well justify such a finding of liability.  If this case is not settled following denial of the motion for summary judgment, there will be adequate time to consider precisely what legal issues are to be submitted to a jury at trial.

## CONCLUSION

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

Dated:   New York, New York
         May 23, 2014

Respectfully submitted,

/s/ Joel Berger
**JOEL BERGER**
360 Lexington Avenue, 16th Fl.
New York, New York 10017
(212) 687-1425
**ATTORNEY FOR PLAINTIFF**