UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:     8/4/14
```

------------------------------------------------------------X
  KAZMEL ROSS,                  :
                    Plaintiff,    :
                          :
        -against-      :         12 Civ. 08545 (LGS)
                          :
  THE CITY OF NEW YORK, CORRECTION  :      ORDER & OPINION
  OFFICER PAUL MULLINGS, *et al.*,    :
                          :
                  Defendants. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Kazmel Ross brought this action against Defendants Paul Mullings, Annette

Hill, Antonio Cuin, Cynthia Johnson and the City of New York, alleging that they acted with

deliberate indifference to Plaintiff's safety in violation of his Eighth and Fourteenth Amendment

rights and state law.  Defendants move for summary judgment.  For the reasons stated below,

Defendants' Motion for Summary Judgment is granted in part and denied in part.

## BACKGROUND

### I.  Facts

      The following facts are taken from the parties' Rule 56.1 Statements and other

submissions filed in connection with this summary judgment motion.  All factual disputes are

resolved, and all justifiable inferences are drawn, in Plaintiff's favor.

      On July 27, 2012, Plaintiff was arrested on a misdemeanor charge and placed into the

custody of the New York City Department of Correction ("DOC") at the Vernon C. Bain

Correctional Facility ("VCBC").  On July 30, 2012, Plaintiff was placed into "3CB," a maximum

security cellblock, which was known to be populated by gang members.

      On July 30, 2012, Plaintiff spoke with Defendant Johnson, a social worker for

Correctional Health Services, and requested a transfer to "C-71," a mental health unit on Rikers

Island.  Plaintiff testified that he had requested a transfer for his safety and because he knew

"violence was at zero" there.  Ross also told Johnson that he "wanted to avoid getting into any

trouble," which he described as "regular prison nonsense," and that he "wanted to be in C-

71where I feel there's no violence and I can be safe."  Johnson denied the transfer request

because Plaintiff did not meet the mental health requirements to be placed in C-71.  Johnson

advised Plaintiff that any safety concerns needed to be raised with the security captain on the

Corrections staff and not the Health staff.  Johnson submitted a mental health report to her

supervisor denying the request.

        The next day, on July 31, 2012, at approximately 12:15 P.M., while Plaintiff was sitting

in the 3CB day room after lunch, Plaintiff was attacked by five inmates and slashed on the face.

Plaintiff sustained a six-inch laceration, requiring 50 stitches and resulting in a scar from

Plaintiff's right ear to his chin.  Plaintiff has never been a member of any gang, and the attack

was not gang related.  Plaintiff did not know his assailants.

        At the time of the slashing, Correction Officer Mullings was the sole guard assigned to

the post within 3CB.  Although he was on duty, he was not inside the 3CB cellblock, in violation

of DOC policy.  Mullings testified that he was not allowed to leave the cellblock, even

temporarily to use the restroom, without arranging for a relief officer to take his place.  Mullings

left his post, which was about twelve feet away from where the slashing occurred, approximately

five to ten minutes before the slashing.  Mullings was not in the cellblock at the time of the

attack, because he had walked to the "bubble," a command center outside the cellblock, to report

a broken key needed to open cells.  Mullings testified that he had broken the key while trying to

turn it in the lock.  The key was necessary because the system for electronically opening and

closing cells had not been working for several years.  Defendant Mullings admitted that

"everyone knows that it should be . . . working."  According to Mullings, the attack was not a

fight, but inmates in 3CB did "tend to fight . . . whenever they feel like it," and that "anything happens."

Correction Officer Hill, who was stationed in the bubble, wrote the work order for a key replacement and noted the time of Mullings's report of the broken key as 12:00 P.M., approximately fifteen minutes before the recorded time of the slashing. After the attack, Plaintiff went to the 3CB cellblock door and banged on it. Defendant Hill let Plaintiff out of the cellblock and into the vestibule in the bubble area, then immediately called for help and came out of the bubble to attend to Plaintiff.

Plaintiff was treated both at VCBC's clinic and later at Lincoln Hospital. While there, he was interviewed by the DOC Intelligence Unit and identified his assailants from photo arrays. The assailants, who were known gang members, were placed into punitive segregation. Plaintiff was placed into protective custody for the remainder of his stay at VCBC.

There are no DOC records of any searches of Plaintiff's cellblock for inmate weapons during July 2012, the month of the assault, nor for any of the prior six months except for March. Warden Cuin was responsible for the failure to carry out the cellblock searches. As Warden, Defendant Cuin also was responsible for the failure to repair the electronic cell locking system.

According to VCBC records, the attack on Plaintiff was the only slashing incident that took place at VCBC during at least five months before the incident. Plaintiff challenges the reliability of these records based on DOC's "shoddy record-keeping." Defendant Mullings testified that in his 17-year DOC career, he had never personally observed a similar slashing, and Defendant Hill testified that in her 14-year DOC career she had never seen this type of attack.

## STANDARD

The standard for summary judgment is well established. Summary judgment is appropriate where the record before the Court establishes that there is no "genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). The Court must construe the evidence in the light most favorable to the

nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. *See*

*Id.* at 255.

## **DISCUSSION**

### **I. Deliberate Indifference Claims against Individual Defendants**

Plaintiff's First Claim for Relief seeks damages under 42 U.S.C. § 1983, the Eighth and

Fourteenth Amendments to the U.S. Constitution, and Article I of the New York State

Constitution for Defendants' alleged deliberate indifference to Plaintiff's safety while he was in

pre-trial detention. Because Plaintiff proffers sufficient evidence from which a reasonable jury

could find that Plaintiff was subjected to conditions that posed a "substantial risk of serious

harm" and that Defendant Mullings was aware of the risk and failed to take reasonable steps to

abate it, Defendants' motion for summary judgment on the claim is denied as to Defendant

Mullings. However, the evidence is insufficient for a reasonable jury to conclude that

Defendants Cuin, Hill and Johnson were aware of the risk and failed to take reasonable steps in

light of that knowledge.

#### **A. Standard**

Claims involving the conditions of pre-trial detention are properly analyzed under the

Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. *Bell v.*

*Wolfish*, 441 U.S. 520, 535 n. 16 (1979). However, claims for deliberate indifference to a

"serious threat to the health or safety of a person in custody" -- whether a pre-trial detainee or a

sentenced inmate -- are analyzed "under the same standard irrespective of whether they are

4

brought under the Eighth or Fourteenth Amendment." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009).

The Eighth Amendment imposes a duty on prison officials "to provide humane conditions of confinement," *Woodford v. Ngo*, 548 U.S. 81, 118 (2006), and to "take reasonable measures to guarantee the safety of [the] inmates in their custody," *Hayes v. N.Y. City Dep't. of Corr.*, 84 F.3d 614, 620 (2d. Cir 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  It also imposes on prison officials "a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833; *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials" at a facility.  *Farmer*, 511 U.S. at 834.  A constitutional violation occurs only when a prison official purposefully subjects a prisoner to a "substantial risk of serious harm" or when the official acts or fails to act with "deliberate indifference" to the risk.  *Farmer*, 511 U.S. at 834.  "[M]ere negligence will not suffice." *Hayes*, 84 F.3d at 620.

A claim of deliberate indifference has both an objective and a subjective element. *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir. 1996).  For the objective test, a "plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm." *Hayes*, 84 F.3d at 620.  For the subjective test, a "plaintiff must demonstrate that the defendant prison officials possessed sufficient culpable intent." *Id.* (citing *Farmer*, 511 U.S. at 834).

Determining culpable intent "involves a two-tier inquiry."  *Id.*  "Specifically a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm."  *Id.*  The officials need not intend the harm.  "[P]roof of awareness of a substantial risk of the harm suffices."  *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).  But the test requires

actual knowledge -- "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). The culpable intent requirement is thus the equivalent of "subjective recklessness," and requires a finding that the prison official "knows of and disregards an excessive risk to inmate health or safety . . . ." *Farmer*, 511 U.S. at 836-37.

### B. Objective Prong of Deliberate Indifference

Plaintiff presents evidence from which a reasonable jury could conclude that, viewed objectively, Plaintiff's conditions of incarceration created a substantial risk of serious harm just before and when he was attacked. Accordingly, the first prong of the deliberate indifference test is satisfied.

The relevant facts include the following: (1) Plaintiff was incarcerated in a maximum security cell block, 3CB, known to be populated by gang members; (2) according to Correction Officer Mullings, inmates in 3CB tend to flight whenever they feel like it, and that "anything happens"; (3) drawing all inferences in favor of Plaintiff, the non-moving party, the prisoners' cells had not been searched for weapons for four months, between March and July when the attack occurred; (4) the inmates of 3CB, including Plaintiff and his assailants, were together in a common area known as the day room rather than in their individual cells; (5) the only correction officer assigned to guard 3CB had left the cell block entirely, leaving the prisoners locked inside, and had been absent for at least five and perhaps as many as 15 minutes, based on records reflecting the time he reported the broken key at the bubble and the time the slashing occurred; and (6) DOC regulations require that a corrections officer leaving his post arrange for a substitute, even for a short absence, which officer Mullings failed to do. Defendants dispute some of these facts, but not for the purposes of this motion. Based on the evidence in the record,

a reasonable jury could conclude that these facts were true and that, taken together, they created a substantial risk of serious harm. That five inmates used the opportunity that these conditions created to slash Plaintiff's face is further evidence that Plaintiff's conditions of incarceration subjected him to a "substantial risk of serious harm."

Defendants argue that in order to show an objective substantial risk of serious harm, Plaintiff must provide evidence of a risk to him from the particular inmates who attacked him. That argument is directly contradicted by the Supreme Court's holding in *Farmer*. An inmate need not show that he was "especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer*, 511 U.S. at 843; *accord Hayes*, 84 F.3d at 621 ("[T]he issue is not whether Hayes identified his enemies by name to prison officials, but whether they were aware of a substantial risk of harm to Hayes."). A plaintiff may show a substantial risk of harm from a specific assailant, or a more general risk of harm due to the conditions at the time of the attack. "[I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

Contrary to Defendants' argument, Plaintiff need not show that inmate attacks were "longstanding, pervasive, well-documented or expressly noted by prison officials in the past . . ." as the exclusive way to establish a serious risk of substantial harm. *See id.* at 842-43. The *Farmer* Court made explicit that, while a plaintiff may use such circumstantial evidence to prove a risk of harm, the plaintiff is not required to do so. *See id.* Plaintiff here relies on other evidence of a substantial risk of serious harm to satisfy the objective prong.

Defendants rely on cases that are factually distinguishable. In each of those cases, there was no evidence of a generalized risk of harm and little or no evidence of a risk specific to the

plaintiff. *See, e.g.*, *Urena v. Fishcer*, 08 Civ. 1309, 2010 WL 2134564 (N.D.N.Y. Apr. 16, 2010) (reasoning that no evidence of risk of harm existed where another inmate attacked plaintiff upon learning that he was in the sexual offender program because there was no evidence that the attacker was predisposed to do so) *report and recommendation adopted*, 2010 WL 2133928 (N.D.N.Y. May 27, 2010) ; *Murray v. Goord*, 668 F. Supp. 2d 344, 358-60 (N.D.N.Y. 2009) (reasoning that the evidence was insufficient where the sole evidence of risk was the correction officer's report that another inmate threatened to attack him); *Garcia v. Rodriguez*, 05 Civ. 5915, 2007 WL 2456631, at *2 (S.D.N.Y. Aug. 24, 2007) (dismissing the plaintiff's claim because the sole evidence of risk was another inmate's "isolated statement that Garcia would 'get hurt.'").

For these reasons, the first prong of the deliberate indifference test is satisfied -- sufficient evidence, viewed objectively in light of all the evidence, of a substantial risk of serious harm to Plaintiff exists.

## C. Subjective Prong of Deliberate Indifference

### 1. Correction Officer Mullings

The evidence in the record is sufficient for a reasonable jury to conclude that Correction Officer Mullings was aware of a substantial risk of serious harm facing Plaintiff and failed to take reasonable steps to abate the harm.

Unlike the other individual Defendants, Defendant Mullings was aware of the conditions, enumerated above, that together created a substantial risk of serious harm to Plaintiff. The critical condition that transformed a dangerous situation into one of constitutional dimensions was Mullings's own absence. The dangerous situation in cellblock 3CB was kept in check by his presence as the single corrections officer monitoring the high security cellblock. That situation became violent when Mullings left the cellblock without obtaining a replacement in violation of DOC policy. Had Mullings ameliorated the risk, by obtaining a replacement or by making other

arrangements for the broken key short of leaving his post, the substantial risk of serious harm would not have arisen.

Defendants argue that a guard's absence from his post, even in a maximum security setting, is not sufficient to establish deliberate indifference, but at most states a claim for negligence.  Defendants discuss *Fair v. Weiburg*, 02 Civ. 9218, 2006 WL 2801999 (S.D.N.Y. Sept. 28, 2006), because that case also involved a pretrial detainee plaintiff in a maximum security prison facility who was stabbed when a defendant officer was away from the plaintiff's cellblock.  The *Fair* opinion is factually distinguishable.  In that case, the plaintiff never expressed *any* fear for his safety, never requested a transfer, and the opinion does not mention the security level of the prison.  *Id.* at *5.  Crucially, the plaintiff presented "*no* evidence that [the defendant officer] was, in fact, assigned to the . . . post, and therefore, was not in a position to prevent the attack on [the plaintiff.]"  *Id.* at *6 (emphasis in original).  Also, contrary to Defendants' representation here, the opinion does not state that the plaintiff's maximum security cellblock was left completely unguarded at the time of the attack.  In fact, the defendants in that case insisted that there was a guard at the post, unlike Mullings's admission here that neither he nor any other guard was at the post at the time of the slashing.  Similarly, other cases cited by Defendants are either factually inapposite or distinguishable based on the existence or sufficiency of the evidence.  *See, e.g.*, *Abrue v. City of New York*,  11 Civ. 6768, 2012 WL 539993, *1 (S.D.N.Y. Feb. 17, 2012) (slashing was objectively a sufficiently serious harm, but no allegations of official's culpable intent); *Zimmerman v. Macomber*, 95 Civ. 0082, 2001 WL 946383, *5 (S.D.N.Y. Aug. 21, 2001) ("[p]laintiff has alleged no facts suggesting [the defendant] had knowledge of any risk"); *Grant v. Burroughs*, 96 Civ. 2753, 2000 WL 1277592, *4 (S.D.N.Y. Sept. 8, 2000) (noting that the plaintiff proffered insufficient evidence as to either prong of deliberate indifference claim); *Jaipersaud v. A.R.D.C. Bldg. # C-74*, 95 Civ. 5330, 1996

9

WL 1086521, *3 (E.D.N.Y. June 19, 1996) ("[The] plaintiff has not alleged that any prison official knew of and disregarded an excessive risk to plaintiff's safety.").

Defendants argue that no Defendant was on specific notice of a substantial risk of serious harm to Plaintiff, citing, *inter alia*, Mullings's testimony that he did not have any prior contact with Plaintiff before the slashing.  As discussed above, this is incorrect.  The Eighth Amendment does not require that prison officials be on notice of a "specific" substantial risk of harm.  *See Farmer*, 511 U.S. at 843.

Defendants also argue that Mullings's failure to meet department guidelines or internal policy rules does not establish a constitutional violation because DOC procedures "do not create legal duties," and as such, Mullings's failure to follow DOC policy cannot in itself establish an Eighth Amendment violation.  *See Salim v. Proulx*, 93 F.3d 86, 92 (2d Cir. 1996) (reasoning that a police officer's failure to call for backup in violation of procedure did not give rise to liability).  Nevertheless, Mullings's infraction is probative in two ways.  It tends to show that, by leaving the inmates completely unguarded, Mullings created a substantial risk, one that needed to be addressed in DOC policy.  That Mullings was aware of the policy and that he violated it tend to show Mullings's knowledge that his own actions created a substantial risk.

Assuming the facts as Plaintiff has presented them, leaving the cellblock entirely unguarded at the time and under the circumstances of the assault constituted deliberate indifference to the risk of serious harm.  Because his culpable intent raises an issue of fact for the jury, he is not entitled to summary judgment.

### 2.  Warden Cuin

The evidence in the record is insufficient for a reasonable jury to conclude that Warden Cuin was aware of a substantial risk of serious harm facing Plaintiff, the first element of culpable intent.

First, Plaintiff proffers evidence that the cell-locking electronic system had been broken for a number of years, and that Defendant was "responsible for assuring . . . that the electronic cell-locking system in the jail was in good working order."  However, nothing in the record suggests that whether prisoners' cells can be locked electronically or manually is relevant to the risk of an inmate-on-inmate attack when they are together in a common area as they were in this case.  Here, the broken system may be viewed as a "but for" cause of Plaintiff's injury, because Mullings left the cellblock to report a broken key he was forced to use in the absence of the electronic system.  Nevertheless, there is no evidence that the broken key and Mullings's absence as a result were likely or foreseeable risks of a malfunctioning electronic locking system.  The risk that the broken locking system would lead to a broken key, then to an absent corrections officer, and then to an inmate attack is attenuated and therefore not substantial, even though in this case it turned out to have serious consequences.

Second, Plaintiff points to evidence that the DOC failed to locate any records of inmate weapon searches during or near the month of the assault and that any failure to carry out the cellblock searches was the responsibility of Defendant Cuin.  Drawing all inferences in favor of Plaintiff, as is required on this motion, one must conclude that the lack of records means that no searches were conducted in 3CB during this period, and that Defendant Cuin was aware of this fact.  Nevertheless, there is no evidence that Defendant Cuin knew that the corrections officer for the cellblock had left his post or was likely to leave his post, particularly given the DOC policy to the contrary.  Without this critical fact, a reasonable jury could not conclude that Defendant Cuin had actual knowledge of a substantial risk of serious harm, the first part of the culpable intent inquiry.  To hold otherwise would mean that Defendant Cuin could be held accountable for any serious injury whenever relevant safety records could not be located.

Defendant Cuin's state of mind regarding his failure to assure weapons searches and to maintain the electronic cell-locking system does not satisfy the test for culpable intent for deliberate indifference.  Plaintiff's allegations, if proven, suggest at most that Defendant Cuin was negligent for failing to exercise sufficient oversight over weapons searches and the locking system.  Therefore, Defendants' summary judgment motion as to the deliberate indifference claim is granted, but the summary judgment motion on the "gross employee negligence" claim against Warden Cuin under the Third Claim for Relief is denied.

### 3.  Correction Officer Hill

The evidence is insufficient to raise a question of fact that Correction Officer Hill failed to take reasonable steps to abate a known harm, the second element of culpable intent, or that she acted unreasonably as is necessary for Plaintiff's negligence claim.

Even if Plaintiff could prove that Defendant Hill knew that a substantial risk of harm existed as to Plaintiff, based on the record, no reasonable jury could find that she acted unreasonably in light of that knowledge.  She was assigned to the bubble and had her own job to perform, even when she observed that Mullings improperly had left his post.  Nothing in the record suggests any action she reasonably could or should have taken.

Plaintiff contends that Hill is liable because she assisted Mullings in fabricating Defendants' alternative version of the events.  Defendants' version of events is not before the Court on this motion, and in any event has no bearing on whether Hill failed to take reasonable steps to ameliorate a known harm, an essential element of Plaintiff's deliberate indifference claim.

The Second Amended Complaint alleges, "Had defendant Hill . . . been observing the cellblock in the absence of defendant Mullings . . ., [her] surveillance would have deterred the assailants . . . and [she] would have observed the incident in time to call for immediate backup

12

that would have ameliorated plaintiff's injuries." Plaintiff has not pursued this argument in response to the motion, perhaps because the evidence shows that Hill first came to Plaintiff's aid after the attack, letting him out of the cellblock and into the vestibule, calling for help and attending to his injury. Moreover, the evidence does not suggest that Hill could or should have been observing the cellblock in a way that would have deterred the assailants.

No reasonable jury could find that Defendant Hill acted with the level of culpable intent necessary to prove deliberate indifference, or even negligence. Defendants' summary judgment motion as to all claims against Defendant Hill is granted.

### 4.   Social Worker Johnson

The evidence is insufficient to show that Defendant Johnson was aware that Plaintiff faced a substantial risk of serious injury and acted unreasonably in light of her knowledge, or even that she was negligent. Plaintiff asked Johnson to authorize his transfer to a mental health unit because of his generalized concerns about his safety. She determined that he was not eligible for a medical transfer and explained that he needed to raise his safety concerns with the Corrections staff rather than the Health staff.

An inmate's communications about generalized safety concerns do not create knowledge of a substantial risk of serious harm. *Rivera v. New York*, 96 Civ. 7697, 1999 WL 13240, at *9 (S.D.N.Y. Jan. 12, 1999) ("communicating vague concerns of future assault by unknown individuals [is] not sufficient to impose liability on an officer who fails to protect an inmate").

Johnson acted appropriately given her level of knowledge. Defendants' summary judgment motion on both the federal and state claims against Defendant Johnson is granted.

### D.   Qualified Immunity

Defendants argue that to the extent that Plaintiff's constitutional rights were violated as a result of deliberate indifference to his safety, the claims against individual Defendants

nevertheless should be dismissed on qualified immunity grounds. This argument is premature. The § 1983 claim survives only as to Defendant Mullings, and he is not entitled to qualified immunity based on the facts most favorable to Plaintiff, which must be assumed for purposes of this motion.

In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, "[t]aken in the light most favorable to the party asserting the injury . . . show the officer's conduct violated a [federal] right[.]" *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)) (alterations in original). "The second prong of the qualified-immunity analysis asks whether the right in question was clearly established at the time of the violation." *Id.* at 1866 (internal quotation marks omitted). "Governmental actors are shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (internal quotation marks and citation omitted).

As discussed above, resolving all factual disputes and drawing all inferences in favor of Plaintiff, the evidence could support a finding that Mullings's conduct -- leaving the cellblock entirely unguarded at the time and under the circumstances prior to the assault -- constituted deliberate indifference to Plaintiff's safety and violated his constitutional right to be free from violence at the hands of other prisoners.

As to the second prong, this Constitutional right and the contours of a claim for deliberate indifference have been clearly established since the Supreme Court's decision in *Farmer* as detailed above. 511 U.S. at 834-845 (establishing that knowledge of facts that support an inference that an inmate faced a substantial risk of harm, and deliberate indifference to the substantial risk of harm, is a Constitutional violation). Nevertheless, even when the law is clear, "the qualified immunity defense also protects an official if it was objectively reasonable for him

14

at the time of the challenged action to believe his acts were lawful." *Taravella v. Town of Wolcott*, 599 F.3d 129, 134 (2d Cir. 2010) (internal quotation marks and citation omitted); *see also Wood v. Moss*, 134 S. Ct. 2056, 2061 (2014).

Again, taking all facts in the light most favorable to plaintiff, Mullings's actions were not objectively reasonable, and he therefore is not entitled to a finding of qualified immunity on this summary judgment motion.

## II.  Deliberate Indifference (*Monell*) Claim against the City of New York

Defendants' motion for summary judgment as to Plaintiff's Second Claim for Relief is granted.  Plaintiff argues, without explicit mention to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), that the alleged deliberate indifference of the individual Defendants was a direct and proximate result of the failure of the City to "properly [] select, train, supervise, promote, and discipline" its employees, including those at DOC and CHS.  *See id.* at 694 (holding that a local government may be sued under § 1983 only when execution of a government's policy or custom, "whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," inflicts injury on the plaintiff).

"Plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury."  *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (internal quotation marks and citation omitted); *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) ("[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality.").  "The inference that a policy existed may, however, be drawn from circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction . . . or evidence that the municipality had notice of but repeatedly failed to make any

meaningful investigation into charges that police officers had used excessive force in violation of the complainants' civil rights. . . ." *Riccitui v. N.Y.C. Trans. Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (internal citations omitted).  However, an "isolated act[] . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." *Jones*, 691 F.3d at 81.

Ιn this case, Mullings's act that triggered his liability was his leaving the high security cellblock unguarded contrary to DOC policy.  The fact of the policy, and Mullings's knowledge of it, in the absence of other contrary evidence, defeat Plaintiff's claim that Mullings's violation was a product of the City's custom or policy.  Also, Plaintiff has failed to adduce any other direct or circumstantial evidence of typical or repeated malfeasance that would suggest a city or DOC custom or policy.  The only relevant evidence on this point suggests that similar attacks were infrequent.

Plaintiff presents evidence that Defendant Mullings was subject to disciplinary hearings in the past and that Mullings failed an exam to be promoted to Captain.  Assuming these assertions to be true, they do not support liability for his employer, the DOC, or the City of New York, which operates the DOC.  This evidence, involving only one employee, is insufficient to establish a municipal custom or policy regarding the oversight of corrections officers.

Defendants' motion for summary judgment on Plaintiff's Second Claim for Relief is granted.

## III.  State Claims

To the extent that Defendants' motion to for summary judgment on the remaining state law claims under the Third and Fourth Claims for Relief is premised on the dismissal of Plaintiff's federal claims, Defendants' motion as to those claims is denied.  Having found genuine issues of material fact as to Plaintiff's deliberate indifference claim against Defendant

16

Mullings, this Court has original jurisdiction over Plaintiff's § 1983 claim, and as such has supplemental jurisdiction over the state claims, which form the "same case or controversy."  *See* 28 U.S.C. § 1367.  Nevertheless, as discussed above, Plaintiff has failed to present evidence sufficient to create a triable issue of fact on any of its claims against Defendants Hill and Johnson.  Accordingly, Defendants' motion for summary judgment on Plaintiff's state law claim against Hill and Johnson is granted, but as to Defendants Mullings, Cuin and the City of New York, the motion for summary judgment on those state law claims is denied.

## <u>CONCLUSION</u>

For the reasons stated above, Defendants' Motion for Summary Judgment is granted in part and denied in part as follows:

- As to the First Claim for Relief, alleging violations of § 1983 against all individual Defendants, the motion is granted, except as to Defendant Mullings.

- As to the Second Claim for Relief against the City of New York, the motion is granted.

- As to the Third Claim for Relief for "gross employee negligence" against all individual Defendants under state law, the motion is granted as to Defendants Hill and Johnson and denied as to Defendant Mullings and Cuin.

- As to the Fourth Claim for Relief alleging respondeat superior liability against the City of New York under state law, the motion is denied.


SO ORDERED.

Dated:  August 4, 2014
        New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE